UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SANTOS YOVANI M.D.,[1]

Petitioner,

v.

WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-05648-TLN-AC

A# 221-435-810

**ORDER**

This matter is before the Court on pro se Petitioner Santos Yovani M.D.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 8.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

///

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual Background

This matter arises out of Petitioner's challenge to his civil immigration detention without a hearing. At the time of his detention, Petitioner was living in the United States for an unknown period of time. (*See* ECF No. 8-1 at 2–3.) Petitioner has no criminal history.[2] (*Id.* at 3.)

On December 31, 2025, the U.S. Department of Homeland Security ("DHS") conducted a targeted enforcement operation (for which Petitioner was not the target). (*Id.* at 2.) Petitioner left the target location in his vehicle; DHS conducted a traffic stop of Petitioner and arrested him as the result of his immigration status. (*Id.*)

The same day, DHS initiated removal proceedings against Petitioner. (ECF No. 1 at 4.) On May 12, 2026, an immigration judge ordered Petitioner removed. (ECF No. 8-2.) On June 8, 2026, Petitioner appealed the order. (ECF No. 8-3.) Therefore, the order of removal is not final nor executable. *See* 8 C.F.R. § 1003.6(a) (order of removal shall not be executed while an appeal is pending); 8 C.F.R. § 1241.1(a) (order of removal is not final until appeal is dismissed by Board of Immigration Appeals ("BIA")). The BIA has not yet set a briefing schedule. (ECF No. 1 at 3.)

Petitioner has now been detained for 7 months without any opportunity to be heard as to his detention. (*Id.* at 10–12.) Petitioner challenges the constitutionality of his detention. (*Id.*)

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

[2] Respondents submit a template opposition to the Petition, which states Petitioner "has criminal history" and purports to attach a RAP sheet. (ECF No. 8 at 1.) However, Respondents do not submit any RAP sheet, instead their own documents state "Criminal History: None." (ECF No. 8-2 (Form I-213).) Respondents' counsel is reminded of her obligations under Federal Rule of Civil Procedure 11(b) to ensure factual contentions have evidentiary support. The Court will not look favorably on future errors of this sort.

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention without a hearing violates the Fifth Amendment. (ECF No. 1 at 10–12.) Respondents contend Petitioner is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b)(2). (ECF No. 8.) The Court first addresses statutory authority before turning to the constitutional claim.

### A. Statutory Authority

The Immigration and Nationality Act generally provides two administrative processes for the removal of noncitizens deemed inadmissible: expedited removal proceedings and standard removal proceedings. The expedited removal process is governed by 8 U.S.C. § 1225. For those in standard removal, apprehension and detention during the pendency of those proceedings is governed by § 1226. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Under § 1226(a), the government has broad discretion whether to release or detain the individual. *Id.* Section 1226(a) also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202. Conversely, § 1225(b)(2) mandates detention during expedited removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who are residing in the United States at the time of their apprehension. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *Brayan C. C. v. Warden of California City Corr. Ctr.*, No. 2:26-CV-00641-TLN-JDP, 2026 WL 710358, at *2–3 (E.D. Cal.

Mar. 13, 2026); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

Respondents offer no new arguments or facts justifying reconsideration in this case. (*See* ECF No. 8.) For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision, including a bond hearing. Having settled the proper statutory authority, the Court turns to the constitutional claim.

B. <u>Fifth Amendment Violation</u>

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas,* 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

the question remains what process is due.”).

*i. Liberty Interest*

“Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.” *Zadvydas*, 533 U.S. at 690. “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). An individual’s liberty interest may be strengthened over time. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).

Petitioner has a clear liberty interest in remaining free from detention. “Even where the revocation of a person’s freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause.” *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey*, 408 U.S. at 481–82). Accordingly, Petitioner has a clear interest protected by the Due Process Clause.

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) “the private interest that will be affected by the official action;” (2) “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;” and (3) “the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents’ actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for over seven months, separated from his community, without any opportunity to be heard as to his detention. Accordingly, Petitioner’s private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner has not received

any opportunity to be heard as to the justification of his detention, either pre- or post-deprivation of liberty. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to a final order of removal; his immigration proceedings are pending before the BIA without any briefing schedule set. Respondents are not claiming that Petitioner is a danger to the public or a flight risk. (*See* ECF No. 8.) Additionally, Petitioner has no criminal history. (ECF No. 8-1.) Therefore, the risk that he is being detained without proper justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

At a minimum, due process required notice and a hearing as to Petitioner's detention. Respondents did not provide any hearing either pre- or post-detention in over seven months of Petitioner's custody. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process right.[3]

---

[3] Respondents ask this Court to order a bond hearing rather than release. As this Court has repeatedly stated: The Court will not give the government a free pass to deny Petitioner his

## IV. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is hereby GRANTED. It is FURTHER ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Santos Yovani M.D. (A# 221-435-810) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents must file a **notice of compliance** with this provision of the Order no later than **July 29, 2026**.
2. Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.
3. Petitioner's Motion for Temporary Restraining Order (ECF No. 2), Motion to Expedite (ECF No. 3), and Motion to Appoint Counsel (ECF No. 4) are DENIED as moot.
4. The Clerk of Court shall serve this Order on **Central Valley Annex Detention Facility**.
5. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

//

//

---

statutory and constitutional rights first and comply with the law later, only after Petitioner is forced to seek judicial relief. The appropriate remedy in this case is not to bring the government into conformity with its governing statutes; it is to release Petitioner from unlawful custody. *See Dinesh S. v. Chestnut*, No. 1:26-CV-01717-TLN-EFB, 2026 WL 1028016, at *3 (E.D. Cal. Apr. 16, 2026) (citing *Quijada Cordoba v. Knight*, 809 F. Supp. 3d 1110, 1122 (D. Idaho 2025) (ordering release of detainee challenging his detention without a bond hearing and collecting cases); *Briceno Solano v. Mason*, No. 2:26-CV-00045, 2026 WL 311624, at *20 (S.D. W.Va. Feb. 4, 2026) (ordering release and rejecting the government's argument that a bond hearing is the appropriate remedy)).

IT IS SO ORDERED.

Date: July 27, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE